# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| BRIAN THOMAS SLAPE, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | CIVIL ACTION NO. 5:18-CV-00111-RWS-CMC |

## ORDER

Petitioner Brian Thomas Slape appealed the Social Security Commissioner's denial of his application for benefits. Docket No. 1. The Court referred the action to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Magistrate Judge issued a Report and Recommendation, recommending the denial be affirmed. Docket No. 14.

### I.    Background

In March 2015, Slape applied for disability insurance benefits and supplemental income benefits. Slape alleged he had been disabled since May 16, 2014, due to bipolar disorder, schizophrenia, a shoulder problem, a back problem, an ankle problem, attention deficit hyperactive disorder, arm problems, leg problems, memory loss and tremors. Docket No. 14 at 1.

The Commissioner of Social Security Administration denied Slape's application at the initial and reconsideration levels. Slape appealed to an Administrate Law Judge ("ALJ"). The ALJ evaluated Slape's entitlement to benefits under a five-step process, *see* 20 C.F.R. § 404.1520(a)(4), and determined that:

1. Slape had not been engaged in substantial gainful activity since the alleged May 16, 2014 onset date.

2. Slape had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral shoulders, obesity, gastroesophageal reflux disease, anemia, seizure disorder, bipolar disorder, depressive disorder and anxiety disorder.

3. Slape's impairments did not correspond to any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix I.

4. Slape was not capable of performing his past work.

5. Slape had the residual functional capacity to perform a limited range of sedentary work, except he can never be exposed to hazards, especially heights, open bodies of water and open fires; he can never operate moving or dangerous equipment, he can perform no reaching above shoulder level, he can perform only simple repetitive tasks for extended periods with simple decision-making, he can interact with coworkers and supervisors but cannot directly interact with the public; and he can respond appropriately to changes in a routine work setting.

Docket No. 14 at 24–25. Based on the fifth finding—the residual functional capacity (RFC) determination—the ALJ determined that jobs existed in the national economy that Slape could perform and, therefore, that Slape is not disabled under the Social Security Act. *Id.* at 25. The Appeals Council denied Slape's request to review the ALJ's decision.

## II. Report and Recommendation

Slape raised two arguments on appeal. First, Slape argued the ALJ's RFC determination was not supported by substantial evidence. Specifically, Slape asserted that the ALJ gave "great weight" to his treating physician's opinion but then failed to explain her decision not to adopt that physician's opinion that Slape had "marked" limitations. Second, Slape argued the ALJ failed to address his mother's written statement in making the RFC determination.

Turning to Slape's first argument, the Magistrate Judge reviewed the ALJ's evaluation of Slape's mental impairments. As the Magistrate Judge explained, in the third step of the disability analysis, the ALJ evaluates the effect of a petitioner's mental disabilities on four functional areas:

the ability to (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself.  Further, the ALJ rates a petitioner's limitations in these areas on a five-point scale—none, mild, moderate, marked and extreme—to determine if the mental disabilities meet or equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix I (2011).  *Id.* at 26.  The Magistrate determined that the ALJ's rating—moderate for each functional area—followed a detailed discussion of Slape's medical records and referenced specific medical exhibits.  *Id.* at 26.  As the Magistrate noted, there was no allegation that the ALJ failed to consider relevant medical evidence.  *Id.*

The Magistrate Judge then reviewed the ALJ's RFC determination, analyzing the medical evidence and the ALJ's findings.  *Id.*  The Magistrate Judge found that that the ALJ could not simply lift the limitations expressed in Dr. Gilcrease's medical opinion into an RFC determination, but had to "interpret" that opinion and translate it to functional limitations.  Docket No. 14 at 30.  The Magistrate Judge further determined that the ALJ validly interpreted and translated Dr. Gilcrease's opinion into a functional determination.  *Id.* at 31.  The Magistrate Judge concluded that the ALJ incorporated Dr. Gilcrease's medical opinions into the residual functional capacity assessment such that her assessment was supported by substantial evidence.  *Id.*

The Magistrate Judge then turned to Slape's second argument: that the ALJ did not address a letter from his mother that he argued "corroborated Dr. Gilcrease's marked limitations" opinion.  The Magistrate Judge determined that the letter did not provide any new information relevant to Slape's functional limitations and that the ALJ did not need to explicitly discuss the statement.  *Id.* at 32–33.  Finding that substantial evidence supported the ALJ's residual functional capacity determination, the Magistrate Judge recommended the Social Security action be affirmed.

### III. Objections and Analysis

Slape objects to the Magistrate Judge's recommendation. Docket No. 15. First, Slape argues that because the ALJ acknowledged that Slape had some "marked limitations" in "understanding, remembering or applying information," the ALJ necessarily had to find that Slape had a marked limitation in this entire functional area. *See* Docket No. 15 at 2 (citing 20 C.F.R. Part 404, Subpart B, Appendix 1 § 12.00(F)(3)(f)). Slape further argues that the Magistrate Judge did not consider the ALJ's failure to establish a "logical bridge" between the evidence and her RFC determination. *Id.* at 3. Finally, Slape asserts that the Magistrate Judge incorrectly found that the ALJ's determination that Slape could perform simple repetitive work tasks for an extended period of time was consistent with Dr. Gilcrease's opinion that Slape had a marked limitation in his "ability to maintain attention and concentration for extended periods." *Id.* at 15. "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3).

Slape's first objection relates to the ALJ's determination that Slape's mental impairments did not satisfy the "paragraph B criteria" and, therefore, did not equal or meet any listed impairment. Pursuant to the regulatory framework, the ALJ considered whether Slape satisfied the "paragraph B" criteria—*i.e.*, whether Slape's functional capacity is limited in four broad areas: the ability to (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain; and (4) adapt or manage oneself. After considering all of the evidence, the ALJ concluded that Slape's impairment in each of these functional areas was "moderate" and, therefore, that Slape's mental impairments did not meet the Paragraph B criteria. *See* Docket No. 9-2 at 25; *see also* 20 C.F.R. Part 404, Subpart B, Appendix 1 § 12.00(F)(2) (requiring a rating of "severe" in one area or "marked" in two areas to satisfy the Paragraph B criteria).

Slape asserts the ALJ erred in finding his limitation in the first area was "moderate" instead of marked. To Slape, because his physician, Dr. Gilcrease, found that he had "marked" limitations in this area, the ALJ was required to find that Slape's limitation in this area was "marked" according to § 12.00(F)(3)(f). *See* § 12.00(F)(3)(f) (stating that for the first, third and fourth functional areas the "greatest degree of limitation of any part of the area of mental functioning directs the rating of the whole area of mental functioning").

First, Slape conflates Dr. Gilcrease's medical opinions with the ALJ's required findings. Although the ALJ considers medical opinions regarding the severity of a mental impairment, "the final responsibility for deciding these issues is reserved to the Commissioner." *See* 20 C.F.R. § 202.1527(d)(2). Moreover, the functional areas on which Dr. Gilcrease opined did not directly correspond to the functional areas the ALJ considered. *Compare* Docket No. 9-18 *with* 20 C.F.R. Part 404, Subpart B, Appendix I § 12.00(E)(1). For example, Dr. Gilcrease evaluated Slape's ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, ability to understand and remember detailed instructions and ability to carry out those instructions. On the other hand, the regulations instruct the ALJ to consider whether Slape is limited in his ability to understand, remember and apply information—for example, following one- or two-step oral instructions to carry out a task, describing work activity to someone else, or understanding and learning terms, instructions and procedures. § 12.00(E)(1). Although Dr. Gilcrease's opinion is relevant to the ALJ's findings, the ALJ nevertheless had to interpret Dr. Gilcrease's opinion to determine the degree of Slape's limitation in the functional area contemplated in the regulations.

Further, Slape's reliance on § 12.00(F)(3) is misguided. This section explains that the "greatest degree of limitation of any part of the area of mental function for the three multipart areas

directs the rating of limitation that whole area." If, for the first functional area, the ALJ found that Slape had a marked limitation in his ability to understand *or* remember *or* apply information, the ALJ would have to conclude that Slape had a marked limitation for the entire first category. § 12.00(F)(3)(f)(i)(emphasis in original). But the ALJ found that Slape had only moderate limitations for the functions in the first area. *See* Docket 9-2 at 25. Section 12.00(F)(3) does not mandate a different result.

Moreover, even if the ALJ were required to determine that Slape had a "marked" limitation in the first area, it would not alter the ALJ's ultimate determination that Slape's impairments did not meet the Paragraph B criteria. An impairment meets or equals a listed disability when the individual has a marked limitation in two of the four areas. § 12.01(B). Thus, a marked limitation finding for the first functional area would not alter the outcome because the ALJ determined that Slape had a moderate limitation in the remaining three areas.

Slape's remaining objections relate to the ALJ's RFC determination. Residual functional capacity describes the most that a person can still do despite recognized limitations. *Scott C. P. v. Berryhill*, No. 3:18-CV-00036-D-BH, 2019 WL 1318365, at *11 (N.D. Tex. Feb. 26, 2019), *report and recommendation adopted*, No. 3:18-CV-0036-D, 2019 WL 1315894 (N.D. Tex. Mar. 22, 2019) (citing 20 C.F.R. § 404.1545(a)(1)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). An individual's residual functional capacity should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Id.*

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision may be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports the ALJ's decision or all the evidence the ALJ rejected. *Scott*, 2019 WL 1318365, at *11 (citing *Falco v. Shalala*, 27 F.3d 16, 164 (5th Cir. 1994)).

A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Id.* Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings." *Id.* (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). Courts "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Id.* Courts, however, may not reweigh the evidence or substitute their judgment for that of the Secretary, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.*

The Supreme Court has recently reiterated how deferential the substantial evidence standard is to the ALJ's decision, noting as follows:

> The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The evidence set forth in detail in the ALJ's decision and summarized in 34-page Report and Recommendation is substantial evidence. It is more than a mere scintilla and a reasonable mind could readily accept it as adequate to support the ALJ's findings. Dr. Gilcrease opined that Slape had slight or no limitations with (1) the ability to understand and remember very short and simple instructions, (2) the ability to carry out very short and simple instructions, (3) the ability to work in coordination with or in proximity to others without being distracted by them, (4) the ability to make simple work-related decisions and (5) in all of the social interaction categories. Tr. 1704–05. Thus, Dr. Gilcrease opined that Slape can "generally function satisfactorily" in all of these areas. Tr. 1704–05. On the other hand, Dr. Gilcrease opined that Slape had marked limitations with (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions and (3) the ability to maintain attention and concentration for <u>extended</u> periods. Tr. 1704 (emphasis in original). Thus, Dr. Gilcrease opined Plaintiff has a "serious limitation" in these areas and Plaintiff "cannot generally perform satisfactorily." Tr. 1704.

The record shows that ALJ considered and incorporated this opinion into her functional capacity assessment. Slape focuses on the inconsistency between the ALJ's finding and Dr. Gilcrease's opinion on Slape's capacity to work for "extended" periods. However, as the Magistrate noted, the ALJ had to translate Dr. Gilcrease's opinions in order to make findings for the "residual functional analysis." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (providing that an ALJ properly interprets the medical evidence to determine a claimant's capacity for work). Even if both the ALJ and Dr. Gilcrease contemplated the same meaning for "extended," their findings may nevertheless be consistent. The ALJ noted that Dr. Gilcrease opined that plaintiff was "capable of working an eight-hour day, five days a week on a sustained basis."

Moreover, the ALJ restricted her RFC finding to Slape's capacity to perform "simple" and "repetitive" activities, which is consistent with Dr. Gilcrease's opinion. The ALJ's findings are a proper interpretation of the medical evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (providing that if substantial evidence supports a factual finding, the factual finding is conclusive)

Though Slape asserts that the ALJ does not build the "logical bridge" between the evidence and her conclusion, the Court disagrees. The ALJ lays out the medical evidence, explaining how she weighed the various opinions and the weight she gave to each opinion. Unlike the cases Slape cites, the ALJ properly analyzed the evidence pursuant to the regulatory framework. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that ALJ failed to build a "logical bridge" from the evidence to his conclusion where ALJ improperly relied on minimal daily activities to find that plaintiff was capable of engaging in substantial physical activity); *Arceneaux v. Barnhart*, No. 1:03-cv-363, 2004 WL 3237376, at *3 (E.D. Tex. Oct. 20, 2004) (finding ALJ failed to consider factors required by regulation when assessing subjective complaints). The ALJ articulated her analysis of the record such that the court can follow her reasoning, and her findings are supported by the substantial evidence.

### IV. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Slape objected. *See* 28 U.S.C. § 636(b)(1). Upon such *de novo* review, the Court has determined that the Magistrate Judge's report is correct and Slape's objections are without merit. It is accordingly

**ORDERED** that Slape's objections (Docket No. 15) are **OVERRULED** and the Magistrate Judge's report (Docket No. 14) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-entitled Social Security action is **AFFIRMED.**

**So ORDERED and SIGNED this 27th day of March, 2020.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE